UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

STACY LEA SIMS, ET AL.                                                                    PLAINTIFFS

V.                                                       CIVIL ACTION NO. 3:09CV84 DPJ-JCS

HALEY BARBOUR, ET AL.                                                                    DEFENDANTS

ORDER

This cause is before the Court on motion of Defendants to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have responded in opposition. The Court, having considered the memoranda and submissions of the parties, finds that Defendants' motion should be granted in part and denied in part.

I.      Facts and Procedural History

Plaintiffs Stacey Lea Sims, John and Elizabeth Barber, and James D. and Sandy Jones adopted children through the Mississippi Department of Human Services, Division of Children and Family Services (the "Department").[1] Plaintiffs entered Adoption Assistance Agreements with the Department which provided the parents with monthly payments. Plaintiffs claim that they were told that, if the foster care payments were increased, their payments as adoptive parents would likewise increase, and they point to the following language in the assistance agreement: "The agency will notify the adoptive parents, in writing, of changes in the Adoption Assistance payment resulting from increases or decreases in foster care rates. Adjustments will be made, if requested by adoptive parents, at the time of the renewal of the agreement." Compl. ¶ 10.

---

[1] Plaintiffs filed this action as class representatives, and their Complaint contains class allegations.

In 2008, as the result of the settlement of the federal lawsuit *Olivia Y. v. Haley Barbour*, Civil Action No. 3:04cv251LN, the foster care rates were increased, but the adoption assistance payments were not. In turn, Plaintiffs made demands on the Department to pay the "proper contracted rate." Compl. ¶¶ 36, 42, 48.[2] An administrative hearing was held on July 25, 2008, and one month later, Richard Berry, the Hearing Officer, entered an opinion that the *Olivia Y.* settlement agreement increased only the foster care rates and the adoption assistance payments were not included in that settlement. Feeling aggrieved, Plaintiffs filed this § 1983 action for denial of procedural due process and equal protection. Plaintiffs seek "declaratory and injunctive relief to compel [Defendants] to meet their legal obligations to appropriate, budget, and pay the State's Adoptive Parents in accordance with said Agreements." Compl. ¶ 6. Defendants responded by filing the instant motion, challenging the Court's subject matter jurisdiction as well as Plaintiffs' alleged failure to state a claim upon which relief can be granted. Plaintiffs responded, and the motion is now ripe for consideration.

II.     Analysis

    A.     *Subject Matter Jurisdiction*

Defendants move to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, contending that Plaintiffs' suit is barred by the *Rooker-Feldman* doctrine and the Eleventh Amendment.

---

[2] It is not clear from the parties' filings whether adoptive assistance payments were equal to foster care rates; it appears that Plaintiffs maintain that when foster care rates were increased, the adoptive assistance payment should have been increased proportionately.

1. *Rooker-Feldman* Doctrine

Defendants first submit that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, and accordingly, this Court lacks jurisdiction to consider Plaintiffs' Complaint. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), *and D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). As explained by the Fifth Circuit Court of Appeals:

> Absent specific law otherwise providing, [the *Rooker-Feldman*] doctrine directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments. Constitutional questions arising in state proceedings are to be resolved by the state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court. The casting of a complaint in the form of a civil rights action cannot circumvent this rule, as absent a specific delegation federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.

*Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) (citations and quotations omitted). The Fifth Circuit extended this rule in *Thomas v. Kadish*, 748 F.2d 276 (5th Cir. 1984), "to deprive the federal district courts of jurisdiction over the claims of individuals who are aggrieved by the judicial acts of state agencies controlled by state courts and who deliberately bypass available channels of state court review." *Scott v. Flowers*, 910 F.2d 201, 206 (5th Cir. 1990).

In *Thomas v. Kadish*, an unsuccessful applicant to the Texas Bar did not seek state court review of the denial of his bar application by the Board of Law Examiners, choosing instead to file a § 1983 action in federal court. 748 F.2d at 279. Thomas argued that his denial of admission by a state board, rather than by a court, did not implicate the *Rooker Feldman* doctrine. *Id.* The Fifth Circuit carefully considered his argument, but ultimately concluded that "the Board was exercising authority on behalf of the supreme court pursuant to that court's rules, standards, and procedures." *Id.* at 282. The Court noted that

3

> the Board of Law Examiners, although created by the Texas legislature, is
> appointed by the Texas supreme court and acts under that court's instruction in
> administering the rules promulgated by that court, and that the Board is governed
> in the administration of its functions by rules adopted by the Texas supreme court.

*Id.* at 281. The Court affirmed dismissal under the *Rooker-Feldman* doctrine.

Subsequently, the Court considered the application of the doctrine in an action by a judge against the Texas Commission on Judicial Conduct stemming from a public reprimand by the Commission. *Scott*, 910 F.2d 201. The Court found that the doctrine did not apply because the Commission "cannot be regarded as the agency of the state court system." *Id.* at 208. The Court observed that, unlike *Thomas*, "the Commission is constitutionally established and is endowed with a measure of independence from the courts." *Id.*

In considering whether the *Rooker-Feldman* doctrine applies to the instant case, the Court asks three questions: (1) were the proceedings judicial in nature; (2) was the agency conducting the proceedings an agent of the state courts; and (3) whether the plaintiff intentionally refrained from seeking state court review of the decision. *Id.* Here, the Court finds the doctrine inapplicable because the agency was not conducting the proceedings as an agent of the state courts.

There is no evidence or suggestion that the hearing officer has any connection to the state court, was operating under rules promulgated by the state court, or was appointed by the state court. As such, the extension of the *Rooker-Feldman* doctrine to "judicial acts of state agencies controlled by state courts" is not applicable in this case. *Id.* at 206; *see also Verizon Md., Inc. v. Public Service Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has

reserved to this Court, see § 1257(a). The doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency."). The Court's exercise of subject matter jurisdiction is not barred by the *Rooker-Feldman* doctrine.

### 2. Eleventh Amendment Immunity

Defendants also assert that the Court lacks subject matter jurisdiction over Plaintiffs' suit due to the Eleventh Amendment. Plaintiffs filed this action against Governor Haley Barbour; Don Thompson, Executive Director of the Mississippi Department of Human Services; and Kate McMillian, Director of the Division of Children and Family Services, all in their official capacities. "Suits against state officers in their official capacities seeking the payment of moneys from the state treasury for alleged compensatory damages, monetary damages, and payments in the nature of equitable restitution are barred by the Eleventh Amendment." *Fennell v. Tex. Educ. Agency*, 273 F.3d 1100, 2007 WL 1075862, at *1 (5th Cir. 2001) (citing *Clay v. Tex. Women's Univ.*, 728 F.2d 714, 715 (5th Cir. 1984)); *see, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest.") (internal quotation marks and citation omitted).

There is, however, a narrow exception to Eleventh Amendment immunity pursuant to *Ex parte Young*, 209 U.S. 123 (1908). "To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). The exception does not apply to a "suit in federal court over alleged violations of

5

state law." *Earles v. State Bd. of Certified Pub. Accountants of La.*, 139 F.3d 1033, 1039–1040 (5th Cir. 1998).

Review of the "Prayer for Relief" in Plaintiffs' Complaint reveals federal based claims for both prospective and retrospective relief. Plaintiffs ask the Court to:

> C. Declare unconstitutional and unlawful pursuant to Rule 57 of the Federal Rules of Civil Procedure:
> 1. Defendants' violation of the class members' rights under the Due Process Clause of the United States Constitution;
> 2. Defendants' violation of the class members' rights under the Equal Protection Clause of the United States Constitution; and
> 3. Defendants' violation of the class members' rights under § 93-17-101 of the Miss. Code Ann. (as Amended).
>
> D. Permanently enjoin Defendants from subjecting members of the plaintiff classes to practices that violate their rights;
>
> E. Order appropriate remedial relief to compensate class members;
>
> F. Order appropriate remedial relief to ensure that a detailed plan is developed, implemented, and monitored to ensure Defendants protect the legal rights of Plaintiffs as set forth in this Complaint;
>
> G. Aware [sic] Plaintiffs their reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 1920; and
>
> H. Grant such other and further equitable relief as the Court deems just, necessary and proper to protect Plaintiff and Plaintiff class members from further harm by Defendants.

Compl. at 11-13.

The Eleventh Amendment bars the above cited claims for damages and retrospective relief. *See Clay*, 728 F.2d at 715. It also bars the claims based on alleged violation of state law. *See Halderman*, 465 U.S. at 120 (holding that federal courts are barred by the Eleventh Amendment from hearing state law claims against state officials in their official capacity under supplemental jurisdiction). However, as Defendants appropriately concede, "[t]o the extent the

6

Plaintiffs are seeking only prospective injunctive relief requiring MDHS to pay them at the increased rate, their claims are not barred by the Eleventh Amendment." Rebuttal at 4-5. *See, e.g., Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 321 (5th Cir. 2008) (observing that monetary damages were barred by Eleventh Amendment but holding that claim for prospective relief fell under *Ex parte Young*). Accordingly, Defendants' motion is granted as to the state law claims and as to federal claims for damages and retrospective relief. Such claims and damages must be sought in state court. The motion is denied as to federal claims that are declaratory or injunctive in nature and prospective in effect.

  B. *Failure to State a Claim*

Defendants also move to dismiss Plaintiffs' claims under the Due Process Clause and the Equal Protection Clause pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

    1. Rule 12(b)(6) Standard

Under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

(quotation marks, citations, and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

The Supreme Court's recent examination of the issue in *Iqbal* provides a framework for examining the sufficiency of a complaint. First, the district court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### 2. Procedural Due Process

Procedural due process "imposes constraints on governmental decisions that deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (citations omitted). "[A] State must provide an individual with notice and opportunity to be heard before the State may deprive him of his property." *Jones v. Flowers*, 547 U.S. 220, 240 (2006) (citations omitted). "To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001).

Plaintiffs contend that they have a property interest, created by the written Adoption Assistance Agreement, in receiving increased adoption assistance payments due to the increased

foster care rates. Resp. at 7-8. Plaintiffs reason that when the Department decided not to increase the adoption assistance payments and failed to notify them, they were denied procedural due process. *Id.* Defendants offer the following arguments in support of dismissal.

First, Defendants argue that this claim should be dismissed because Plaintiffs cannot assert a stand-alone claim for violation of the Due Process Clause–they must bring this claim under 42 U.S.C. § 1983. While Defendants correctly interpret the law, they incorrectly interpret the Complaint, which expressly premises jurisdiction on § 1983. Plaintiffs therefore satisfied the requirements of notice pleading; Defendants' first argument is not well-taken.[3]

Second, Defendants maintain that Plaintiffs do not have a property interest in increased adoption assistance payments based on the increase in the foster care rate. "It has long been recognized that benefits distributed by the government are a form of property protected by the due process clause." *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 735 (5th Cir. 2008). However, to have a property interest in a benefit, Plaintiffs must have "more than an unilateral expectation of it," they must have "a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Blackburn v. City of Marshall*, 42 F.3d 925, 936–37 (5th Cir. 1995). "To determine whether statutes or regulations create a protected property interest, [the Court] must ask whether they

---

[3] Defendants make the same contention with respect to the equal protection claim. For the same reason, the argument likewise fails.

place 'substantive limitations on official discretion.'" *Ridgely*, 512 F.3d at 735 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).

Here, Plaintiffs base their property interest on the Adoption Assistance Agreement, which provides, "The agency *will* notify the adoptive parents, in writing, of changes in the Adoption Assistance payment resulting from increases or decreases in foster care rates. Adjustments *will* be made, if requested by adoptive parents, at the time of the renewal of the agreement." Compl. ¶ 10 (emphasis added). Defendants claim that other portions of the agreement negate this language, but Plaintiffs also allege in their Complaint that "they were told by the Defendants that if the foster care rates were adjusted; [sic] adoption assistance would be adjusted, [sic] at the time of execution." Compl. ¶ 11. They likewise aver that they were told by Tasha Satcher, an employee of the Department, that "the Adoption Assistance Payment was tied to the Foster Care Rate" and "if the rate went up, the payment would likewise go up." Compl. ¶¶ 34, 40, 46. As such, the Complaint references benefits they claim were contractually owed and an alleged "mutually explicit understanding." *See Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (discussing property interests created by contract and mutual understandings). Viewing the well-pled facts in the light most favorable to Plaintiffs, the Court cannot say that Plaintiffs failed to allege a property interest in increased adoption assistance payments based on an increase in the foster care rate. *See Twombly*, 550 U.S. at 555.

Third, Defendants generally assert that the Complaint fails to identify any due process violation and that Plaintiffs cannot convert a breach of contract action into a due process claim. Plaintiffs respond that Defendants violated their right to procedural due process when Defendants failed to provide notice of the increase in foster care rates. As an initial point, the

failure to give notice "at a meaningful time and in a meaningful manner" will violate procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). However, the parties do not address whether the alleged delay in this case could amount to a due process claim. Instead, Defendants simply argue in reply that Plaintiffs' Complaint fails to aver a lack of notice. That argument is not persuasive. The Complaint states that the Department raised the foster care rates in January 2008, and upon "[r]ealizing the [Department's] failure to raise the [adoption assistance payment] rate," Plaintiffs "made demand upon" the Department "to pay the proper contracted rate." Compl. ¶¶ 35, 36, 42, 48. While Plaintiff's word choice may not have been artful, the Court must view these factual averments in a light most favorable to them. It is implicit in the Complaint that Defendant failed to notify Plaintiffs of its decision not to raise the adoption assistance payment rate until after Plaintiffs demanded an increase.

Viewed in a light most favorable to Plaintiffs, the Complaint sufficiently pleads a due process claim. Accordingly, the Court find that Defendants' motion to dismiss Plaintiffs' procedural due process claim should be denied.

        3.        <u>Equal Protection</u>

The Equal Protection Clause "directs states to treat all persons similarly situated alike." *Vera v. Tue*, 73 F.3d 604, 609 (5th Cir. 1996) (internal quotations omitted). Plaintiffs allege that, when the Department chose to increase the foster board rate and not the adoption assistance payments, it treated adopted children differently than children in foster care in violation of the Equal Protection Clause. Resp. at 8.

Having fully considered the premises, the Court is left with questions not addressed in the parties' submissions. In light of that, and the fact that the due process claim will survive dismissal, the Court will deny the equal protection portion of the motion at this time.

IV. Conclusion

Based on the foregoing, the Court finds that Defendants' motion should be granted in part and denied in part as set forth herein.

**SO ORDERED AND ADJUDGED** this the 16th day of November, 2009.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE